**Marie A. OPGENORTH, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant.**

No. 94–C–874.

United States District Court, E.D. Wisconsin.

Aug. 29, 1995.

Angermeier & Rogers by Patrick T. Berigan, Milwaukee, WI, for plaintiff.

Thomas P. Schneider, U.S. Attorney by Matthew V. Richmond, Milwaukee, WI, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

Marie Opgenorth filed this action on August 9, 1994, seeking judicial review of the final decision of the Secretary of Health and Human Services [the "Secretary"] which denied her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g), in connection with her claim that she suffers from chronic fatigue syndrome ["CFS"] and other disorders. Effective March 31, 1995, 42 U.S.C. § 405(g) was amended to provide that actions seeking judicial review of the denial of disability benefits are to be brought against the Commissioner of Social Security. However, in light of the administrative record in this case, the case caption will not be altered, and the court will continue to refer to the defendant as the Secretary.

In his February 14, 1994, decision, the Administrative Law Judge [the "ALJ"] concluded that Ms. Opgenorth suffered from CFS and other disorders but that such impairments neither met nor exceeded the requirements of any listed impairment in Appendix 1 Subpart P, Regulations No. 4. The

ALJ also found that, despite her illness, the plaintiff had the residual functional capacity to perform her past relevant work as a part-time tax intern or as a part-time bookkeeper as well as the full range of sedentary work available in the national economy. Based on these findings, the ALJ concluded that the plaintiff was not under a disability at any time through the date of his decision. This decision became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review.

Presently before the court is the plaintiff's motion for summary judgment seeking reversal of the ALJ's decision denying benefits on the ground that substantial evidence does not support the ALJ's finding that the plaintiff was not under a disability as defined in the Social Security Act. The plaintiff's motion for summary judgment of reversal will be granted.

### I. LAW

■ The Social Security Act recites the standard of review to be applied in this case: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, the ALJ's finding that Ms. Opgenorth was not disabled may not be reversed if it is supported by substantial evidence in the record. *Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir.1989) (citing *Farrell v. Sullivan,* 878 F.2d 985, 988 (7th Cir.1989)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

To be found "disabled," a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be viewed as disabled "only if his physical or mental impairment or impairments are of such a severity that he is not only unable to do his previous work but cannot ... engage in any other kind of sub-stantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ The process applied by the Secretary in determining whether a claimant is disabled involves a five-part test:

1) is the claimant presently employed; 2) is the claimant's impairment or combination of impairments severe; 3) does the impairment meet or exceed any of the list of specific impairments (the grid) that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; 4) if the impairment has not been listed by the Secretary as conclusively disabling, is the claimant unable to perform his or her former occupation; and 5) if the claimant cannot perform the past occupation, is the claimant unable to perform other work in the national economy in light of his or her age, education and work experience. A negative conclusion at any step (except for step three) precludes a finding of disability.

*Young v. Secretary of HHS,* 957 F.2d 386, 389 (7th Cir.1992) (citations omitted); *see also* 20 C.F.R. § 404.1520. Upon satisfying steps one and two, the claimant will automatically be found disabled if she suffers from an impairment that is listed in Appendix 1 Subpart P, Regulations No. 4. *See Stuckey,* 881 F.2d at 508. If the claimant does not have a listed impairment, the Secretary must then determine whether the claimant is capable of performing her past work under step four, or other work under step five. *Stuckey,* 881 F.2d at 508.

### II. ANALYSIS

The ALJ denied Ms. Opgenorth's claim based on steps four and five of the five-part test. As previously stated, Ms. Opgenorth maintains that the ALJ's conclusion that her illness did not preclude her from performing her past work or any other relevant sedentary work lacks substantial evidentiary support.

Ms. Opgenorth testified that she was born on April 25, 1957, and presently resides in Milwaukee with her parents. She is unmarried and has no children. Her educational history reveals that she has obtained a bachelor's degree in accounting and finance and a

master's degree in business administration. Prior to her alleged disability on July 24, 1992, Ms. Opgenorth worked as a police officer, part-time tax intern, teacher's assistant and, most recently, part-time bookkeeper.

The plaintiff has a history of chronic pain which began shortly after a November 1987 automobile accident in which she suffered a cervical strain injury. She has been diagnosed by her physicians as suffering from CFS, fibromyalgia, irritable bowel movement and dysthymia (depression). CFS is an illness characterized by fatigue, mild cognitive dysfunction and in some cases low-grade fever and tender lymph nodes. *The Merk Manual of Diagnosis and Therapy*, 16th ed. at 2282–83 (1992). Fibromyalgia is an ailment characterized by aches, pain and stiffness in the joints and muscles due to inflammation of the body's fibrous connective tissues. *Mayo Clinic Family Health Book* at 973 (1990).

The substance of Ms. Opgenorth's testimony as to her symptoms is that she is constantly experiencing some level of pain throughout her entire body including her muscles and joints. The pain she described radiates from her back and neck and is aggravated by activity and the weather. Her symptoms also include overwhelming fatigue, cognitive difficulties, sleeplessness, headaches, muscle weakness, body stiffness, diarrhea and nausea. The record further shows that Ms. Opgenorth has often complained to her physicians of malaise, increased body temperature, persistent sore throat, and tender lymph nodes.

As to her functional abilities, the plaintiff stated that, because of her medical condition, she is able to sit for only 20 minutes in a day and can stand for no more than 15 minutes a day. She can walk no more than short distances and lift no more than 3 pounds. According to her testimony, her ability to exercise, perform household chores, cook or engage in any hobbies have been eliminated by her condition. Her medical problems have also severely restricted her capacity to feed and dress herself, read, climb stairs, grasp objects with her hands and socialize with friends. Her mother's statements, which were provided to the ALJ in the form of two exhibits, essentially corroborated the plaintiff's testimony.

The treatment for Ms. Opgenorth's chronic problems began after her car accident in 1987. From 1987 through early fall of 1989, her treatment generally consisted of physical therapy, rest and muscle relaxants. Because this treatment did not alleviate her pain, Dr. Hinkle recommended that she participate in a six-week multi-disciplinary pain management program. The plaintiff completed the program and continued with physical therapy and pain medication without success. Indeed, the record shows that her condition worsened despite her efforts. In 1989, Ms. Opgenorth was diagnosed with myofascial pain syndrome which is a another term for fibromyalgia. *The Merk Manual of Diagnosis and Therapy*, 16th ed. at 1369 (1992). After 1991, that diagnosis was expanded to include CFS, dysthymia, and irritable bowel syndrome.

In addition to Ms. Opgenorth's testimony, forty-three exhibits were presented to the ALJ which primarily consisted of the records and statements of Ms. Opgenorth's treating physicians: Dr. Stephen Hinkle, Dr. Cassandra Welch, Dr. Anthony J. Sweeney and Dr. Walter Davison. By letter of March 21, 1991, Dr. Hinkle informed Ms. Opgenorth's attorney who was handling her personal injury claim that the plaintiff's condition would not interfere with her ability to work on a full-time basis. Dr. Hinkle recommended that she participate with a "follow-up program" at the pain center. Ms. Opgenorth did not take part in this program.

However, some two years later, Dr. Hinkle's opinion as to the extent of Ms. Opgenorth's condition changed. In June 1993, he concluded that the plaintiff's "fibromyalgia, probable [CFS], irritable bowel syndrome, and dysthymic disorder" had left her

> totally disabled by her constant pain, severe fatigue, and cognitive difficulties. I believe she is unable to perform even sedentary work being forced by pain to change positions frequently and being able to sit stand, or walk for only short periods of time.... Even with dramatic restrictions of physical activity, her fatigue and

cognitive difficulties preclude sustained intellectual efforts.

The opinion expressed by Dr. Welch, Ms. Opgenorth's treating physician for over six years, is consistent with Dr. Hinkle's opinion of June 1993. Dr. Welch confirmed that Ms. Opgenorth's "illness has radically limited her life. She is unable to maintain work at any level and her social life is virtually nil."

Dr. Sweeney, who treated the plaintiff since May 1991 reached similar conclusions regarding Ms. Opgenorth's ability to work and stated that attempts at controlling the problem with medication were unsuccessful due to Ms. Opgenorth's sensitivities to the medication and because the medication often exacerbated the symptoms. In addition, Dr. Sweeney's letter outlined the large amount of laboratory work performed on Ms. Opgenorth. He noted that Ms. Opgenorth has had

> extensive laboratory work. Epstein–Barr virus serologies were performed on April 16, 1992 and also on June 16, 1993. These serologies are elevated.... These results suggest a chronic Epstein–Barr infection. She has also had a Herpes virus testing that has been abnormal, .... She's also shown abnormalities in immune cell functioning.... Although the precise mechanism of [CFS] is not known, many researchers in this field have found abnormalities in immune function cells as Ms. Opgenorth shows.

The Epstein–Barr virus causes infectious mononucleosis and is associated with Burkitt's lymphoma and nasopharyngeal cancer. The American Medical Association, *Home Medical Encyclopedia*, Vol. 1, at 415 (1989).

With respect to Ms. Opgenorth's functional limitations, Dr. Sweeney, consistent with Drs. Hinkle and Welch, opined that the plaintiff is "unable to perform any type of work, even sedentary work. .... She has difficulty bending, carrying, reaching, lifting and her ability to sustain any physical activity is unpredictable.... She is unable to maintain any kind of work, even at a part time level."

Dr. Davison, who treated Ms. Opgenorth from May 1, 1991, through approximately September 1992, shared this view; he stated that the plaintiff is "100% disabled due to complications of her [CFS] and accompanying depression."

At the hearing, the ALJ also heard from Dr. Murray Herman, an internist. Dr. Herman stated that he "skimmed through" Ms. Opgenorth's file in anticipation of the hearing but did not examine Ms. Opgenorth personally. He summarized the plaintiff's medical problems by stating that the plaintiff did not appear to have any organic disability. However, he went on to say that the absence of an organic explanation "doesn't mean that she doesn't have any disability." Dr. Herman did not discuss Ms. Opgenorth's functional limitations.

Although the ALJ found that Ms. Opgenorth had CFS, he nevertheless concluded that the lack of any objective medical evidence to substantiate her symptoms or functional limitations demonstrated that she had the residual functional capacity to perform her past work and any number of sedentary jobs in the economy. Relying on the absence of objective medical evidence, the ALJ discredited the plaintiff's testimony as well as the opinions of her four treating physicians relating to her symptoms and the extent to which the illness affected her functional abilities.

In my opinion, the ALJ clearly erred in this finding and also in using it as a basis for discrediting the plaintiff and her treating physicians. This is so because the ALJ's initial finding that Ms. Opgenorth did in fact have CFS required him to conclude that she suffered from the symptoms usually associated with CFS unless there was substantial evidence in the record to support a determination that she did not endure such symptoms. *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.1994). Moreover, "[b]lind reliance on the lack of objective findings is wholly inconsistent with the secretary's policy in [CFS] cases...." *Rose*, 34 F.3d at 19 (citing the Secretary's Program Operational Manual System § DI 24575.005 (1993) ("Physical examination may be within normal limits. Individual [CFS] cases must be adjudicated on the basis of the totality of the evidence....")).

The record does not contain any meaningful evidence to support a finding that Ms. Opgenorth was not suffering from the symptoms of CFS, namely, a significant level of fatigue, pain and diffuse muscle weakness. Indeed, the uncontroverted evidence, including the medical evidence as provided in the medical records and written statements of the doctors, demonstrates that over the course of four years Ms. Opgenorth complained of and was treated for persistent fatigue, headaches, muscle weakness and a number of other symptoms consistent with CFS. The uncontested evidence also shows that Ms. Opgenorth's functional ability was impaired as a result of her illness. Plaintiff's own testimony, the statements of her mother and those of her doctors all indicate that Ms. Opgenorth was able to sit, stand or walk for only short periods and was unable to lift more than three pounds.

■ The ALJ's reliance on Dr. Herman's conclusion that there was no objective medical evidence to support Ms. Opgenorth's disability claim to the exclusion of all other evidence in the record was a blunder. Such reliance erroneously ignored the uncontested statements of the plaintiff's treating physicians who had the opportunity personally to observe the plaintiff over many years. *See Micus v. Bowen,* 979 F.2d 602, 609 (7th Cir.1992) (while ALJ may consider bias of treating physician, he cannot "blithely reject a treating physician's opinion or ... discount that physician's opportunity to have observed the claimant over a long period of time.").

The ALJ made no finding of bias on the part of the treating physicians nor did he explain in any meaningful manner his total rejection of their medical opinions. Further, the findings of the treating physicians were not disputed; Dr. Herman testified that the absence of medical evidence did not automatically preclude a disability finding, and he expressed no opinion as to whether Ms. Opgenorth, in fact, suffered from the symptoms of which she complained. The ALJ's rejection of the evidence offered by the treating physicians in this case suggests that he impermissibly substituted his own medical conclusions for the uncontroverted opinion of the treating physicians. *Amax Coal Co. v. Beasley,* 957 F.2d 324, 327 (7th Cir.1992).

■ The ALJ's conclusion that the plaintiff's illness and accompanying symptoms and physical limitations were not confirmed by any objective medical evidence is also deficient to the extent that it inexplicably ignores the existence of objective medical evidence in the record—the plaintiff's laboratory results which showed elevated levels of the Epstein–Barr virus and herpes virus serologies and abnormal immune cell functioning.

■ The Secretary argues that the ALJ's ruling that the plaintiff was not disabled is further supported by the fact that the plaintiff's treatment was not "aggressive." Defendant's Memorandum at 6. For instance, the Secretary notes that the plaintiff did not receive emergency treatment, hospitalizations or extensive occupational therapy and was currently taking only non-prescription medication. However, the Secretary's finding as to the nature of the plaintiff's treatment is not sound as it ignores relevant evidence in the record showing that the plaintiff participated in considerable physical therapy and had tried a vast number of prescription medicines without success throughout the course of her illness. *Amax Coal Co.,* 957 F.2d at 328 (on review, district court is permitted to take into account evidence detracting from the ALJ's decision).

In my opinion, there is not substantial evidence to support the ALJ's denial of benefits. The plaintiff's motion for summary judgment will be granted. The ALJ's decision denying the plaintiff benefits will be reversed, and this case will be remanded with instructions to the Secretary to grant benefits after a determination of the date of onset of the plaintiff's disability.

### ORDER

Therefore, IT IS ORDERED that the plaintiff's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the ALJ's decision denying the plaintiff disability benefits be and hereby is reversed, with costs.

IT IS FURTHER ORDERED that this case be and hereby is remanded to the Secretary with instructions that benefits be awarded to the plaintiff after a determination of the date of onset of the plaintiff's disability.