[No. C028293. Third Dist. Dec. 18, 1998.]

BETTY WESTPHAL, Plaintiff and Respondent, v.
WAL-MART STORES, INC., Defendant and Appellant.

**COUNSEL**

Porter, Scott, Weiberg & Delehant, Russ J. Wunderli and David A. Melton for Defendant and Appellant.

Douglas E. Stein; and Timothy E. O'Laughlin for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, J.**—Wal-Mart Stores, Inc. (defendant) appeals from the judgment in favor of Betty Westphal (plaintiff) in this personal injury action arising out of a slip-and-fall accident that occurred on defendant's property. Defendant contends the judgment must be reversed because the amount of damages awarded is excessive. Plaintiff retorts that the appeal is frivolous and asks for sanctions.

We shall affirm the judgment and grant plaintiff's request for sanctions. As we will explain, this appeal is frivolous because it indisputably has no merit.

The case was tried fairly in the superior court. Presented with evidence that defendant's negligence caused plaintiff to suffer severe pain in her back and foot (requiring her to use crutches and other devices for several months) and develop a recognized, chronic pain syndrome of headaches and constant discomfort of varying intensity in her neck, back, leg and foot (which has altered her lifestyle), the jury found that plaintiff had suffered special damages of $8,000 and general damages of $150,000. Finding the award generous but not outrageous, the trial court denied defendant's motion for a new trial on the ground of excessive damages.

Summarizing the evidence in the light most favorable to its position in the trial court, defendant asks us to be an "independent voice of conscience" and find the general damages award is excessive. Defendant fails to appreciate that, as a reviewing court, we view the evidence through a different lens than does the trier of fact. The judgment comes to us cloaked with the presumption that it is correct. In assessing a claim that the jury's award of damages is excessive, we do not reassess the credibility of witnesses or reweigh the evidence. To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor. We may interfere with an award of damages only when it is so large that it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury.

Application of these well-established rules of appellate review to the evidence in this case leads to but one conclusion: defendant's appeal is utterly without merit, and plaintiff wrongly has been compelled to defend against it. Accordingly, we shall direct defendant to pay sanctions to plaintiff and to this court to compensate each for the expense of addressing plaintiff's frivolous appeal.

## FACTS

In December 1994, while working as a product demonstrator in premises owned by defendant, the 55-year-old plaintiff slipped and fell on a wet concrete floor. According to a witness, it was a "fast slip-fall" and plaintiff landed with a "pretty hard thump" on her back.

Plaintiff immediately felt pain in her whole left side, tailbone and left foot, and she could barely walk. After she rested and iced her leg, plaintiff was

helped to her car. The drive home was difficult. Upon arriving, she crawled into the house and went to bed.

The next morning, plaintiff went to the hospital for X-rays and examination. She was diagnosed with lumbar, coccyx and ankle sprains, outfitted with a walking cast and crutches, and given a prescription for Motrin. For several months following the accident, she had to use assistive devices, such as crutches, a chair with rollers, and a walker, to help her ambulate due to the pain in her low back and left foot.

Between December 1994 and July 1995, Donald Davis, D.C., treated plaintiff for headaches, lower and upper back pain, neck pain, and foot/ankle pain. Davis conducted a "Sotohaul" test, a left-shoulder "Dressor" test, a compression test, a leg-raising test, and "Yoeman's" test, all of which indicated that plaintiff was injured and in pain. Plaintiff also had diminished reflexes of the left triceps. Davis diagnosed plaintiff's condition primarily as cervical strain syndrome, cephalgia and thoracolumbar strain/sprain, lumbosacral strain/sprain, and left ankle sprain.

The first time that Davis saw plaintiff, she rated her pain as 10 on a scale of 10. Plaintiff was sore and aching all over her body and felt like she had been beaten up. During her last few visits, her pain was staying around four and five on a ten-point scale, with higher pain ratings during the times when there were longer gaps between treatments. Davis found plaintiff to be a credible person and her complaints of symptoms were consistent with the fall.

Davis assessed plaintiff as being able to return to work on a limited basis in February 1995, but only for four hours per day, with no lifting over fifteen pounds and no prolonged standing. Her job description at that time did not conform to these limitations. In April, Davis judged plaintiff to be permanent and stationary, with symptoms that would continue indefinitely, consisting of pain and stiffness in lumbar spine and difficulty rotating her head and neck to the left. Because plaintiff was suffering from chronic pain and had permanent residual disability, Davis did not expect her to get better.

Plaintiff saw Robert Fugitt, D.C., one time on November 28, 1995, for a qualified medical examination at the request of the workers' compensation carrier. At that time, plaintiff's primary complaint was pain in her left hip and low back pain, as well as pain radiating down her left leg, left heel and foot pain, neck pain, and shoulder pain. Ninety percent of her pain was attributed to the low back and left hip; it was constant and slight in the morning, increasing through the day.

Fugitt performed various orthopedic strength tests which indicated decreased strength, hypertonicity or muscle spasms, and pain. Fugitt's impression was that plaintiff was suffering from myofascial pain syndrome from injuries sustained in her accident. Fugitt stated plaintiff was as well as she was going to get and no longer could do what was required to work as a product demonstrator.

Eugene Abravanel, M.D., examined plaintiff in December 1995, a year after the accident. Plaintiff's history indicated she could not do any normal activities due to constant pain of the ankle, coccyx, left trochanter and buttocks area, as well as pain in the neck and shoulder muscles, and headaches. Plaintiff had tenderness in the intertrochanteric line, pain in the sacroiliac joint, a malrotation of the hips with an unweighting of the left hip, a tender coccyx upon just moderate palpation, and the possibility of coccygeal bursitis. She also had subtalar and subcalcaneus pain in her left foot, and ankle pain that was so severe plaintiff did not want to be touched for a range of motion test.

Abravanel opined plaintiff was suffering from Piriformis syndrome, a specific example of myofascial pain syndrome, which refers to an inflamed muscle or posttraumatic tear without a cure.[1] He testified this could result in a tremendous amount of problems and plaintiff's condition was chronic. Furthermore, he noted, the postural changes created by plaintiff's rotated hip and her compensation for her pain would, in and of themselves, cause further pain. Abravanel noticed deconditioning, with a loss of muscle in the rhomboid trapezius area, which could have been caused by myofascial syndrome or fibromyalgia. According to Abravanel, soft tissue injuries do not show up on X-rays and sometimes are very serious, do not heal well, and can be much worse than fractures.

Plaintiff, who stopped seeing Dr. Davis when she moved to Wisconsin in July 1995, testified concerning the manner in which the accident changed her life. She saw a chiropractor for several months after moving to Wisconsin. Although the treatments were beneficial, she had to stop seeing him because she no longer could afford his services. She wakes up every day hurting all over and has constant headaches. Prior to the accident, she never had headaches. She still suffers from a dull ache and pain in her left hip and tailbone while sitting, rating the pain level at six to seven on a ten-point scale. She suffers from constant upper back pain of varying intensity, upper

---

[1]"The Piriformis is a flat muscle, pyramidal in shape, laying almost parallel with the posterior margin of the Gluteus medius. It is situated partly within the pelvis against its posterior wall, and partly at the back of the hip joint." (Gray's Anatomy (29th ed. 1975) p. 499.)

leg pain, shoulder and neck pain, as well as pain in the left foot. She has had to give up bicycling, roller skating with her sister, walking on the beach with her daughter in Oregon, and going on long drives. When she danced at her high school reunion, she "paid dearly for it" the next day, "aching all over" and hurting in her left side. She has had difficulty in finding and maintaining employment that is within her physical capabilities.

Melanie Passos, a friend who observed plaintiff immediately after the accident, testified that it was obvious plaintiff was in pain. Passos and a number of other people helped plaintiff with shopping errands and fixing meals after the accident. Prior to the accident, plaintiff never complained of pain and enjoyed her work. Plaintiff no longer can walk as quickly as before the accident.

Corinne Hagan, plaintiff's former supervisor, verified that plaintiff no longer can walk quickly. Hagan has noticed a change in plaintiff following the accident; plaintiff looks a lot older and is in a lot of pain, which is obvious from the way she looks, sits, and moves.

Yolanda Herr, plaintiff's daughter, testified that her mother "worked a lot," was in great health and was very physically active between 1991 and 1994. Following the accident, Herr had to assist plaintiff on a daily basis for three months. Plaintiff was not able to walk on her own, her head would shake uncontrollably, and she could not hold her infant grandchild, as she was very weak. As of the time of trial, plaintiff no longer could keep up on walks like she had been able to do, and she could not lift her grandchildren. Plaintiff is in chronic pain and is constantly suffering from headaches.

The jury returned a special verdict finding defendant's negligence was a cause of plaintiff's injuries. The jury found plaintiff had suffered economic damages in the amount of $8,000 and noneconomic damages in the amount of $150,000. The jury further found plaintiff was 5 percent contributorily negligent. Accordingly, judgment was entered against defendant in the amount of $150,100.

The trial court denied defendant's motion for new trial on the ground of excessive damages. The court noted plaintiff's injuries were permanent. Although the award was generous, the court indicated it was not surprised and could not say the jury clearly should have reached a different verdict. In the court's view, the award was not so outrageous that it needed to be reduced.

DISCUSSION

I

■ Defendant attacks the jury verdict on the ground of excessive damages. The standard of review is well established.

■ The amount of damages is a fact question, committed first to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. (*Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1067 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506 [15 Cal.Rptr. 161, 364 P.2d 337].) All presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule. (*Pool* v. *City of Oakland, supra*, at p. 1067; *Seffert* v. *Los Angeles Transit Lines, supra*, at p. 507; *Sommer* v. *Gabor* (1995) 40 Cal.App.4th 1455, 1471 [48 Cal.Rptr.2d 235].)

We must uphold an award of damages whenever possible (*Seffert* v. *Los Angeles Transit Lines, supra*, 56 Cal.2d at p. 508) and "can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury." (*Id.*, at p. 507; accord, *Scofield* v. *Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 1012 [52 Cal.Rptr.2d 915].)

In assessing a claim that the jury's award of damages is excessive, we do not reassess the credibility of witnesses or reweigh the evidence. To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor. (*Huang* v. *Board of Directors* (1990) 220 Cal.App.3d 1286, 1294 [270 Cal.Rptr. 41].)

■ Defendant claims the award of $158,000 is excessive because it is several times the amount of plaintiff's out-of-pocket expenses for medical bills and lost income.

However, defendant cites to no authority establishing limits upon a general damage award based upon a small amount of special damages. In fact, there is no specific requirement that any special damages be awarded before general damages may be awarded. (*Hilliard* v. *A. H. Robins Co.* (1983) 148

Cal.App.3d 374, 412 [196 Cal.Rptr. 117].) For example, *Sommer* v. *Gabor, supra,* 40 Cal.App.4th 1455, upheld a $2 million general damages award despite the absence of special damages. (*Id.*, at pp. 1470-1471.)

According to defendant, "[plaintiff] suffered little more than a bruised tail bone and was diagnosed with the catch-all myofascial and Piriformis syndromes. The diagnoses were essentially made on reflections of plaintiff's subjective complaints. Plaintiff does not have anything objectively wrong with her and did not sustain any fractures, broken bones and did not require any surgery."

It appears that defendant questions the validity of myofascial pain syndrome and believes plaintiff is exaggerating her injuries. However, defendant presented no evidence, expert testimony, or authority casting doubt on the existence of this syndrome or the severity of the pain associated with it.

Myofascial pain syndrome, also known as fibromyalgia, is a syndrome characterized by persistent pain, which may arise following a traumatic injury and for which there is no cure. (The Merck Manual of Diagnosis and Therapy (15th ed. 1987) p. 1271; *Sarchet* v. *Chater* (7th Cir. 1996) 78 F.3d 305, 307; *Opgenorth* v. *Shalala* (E.D.Wis. 1995) 897 F.Supp. 1199, 1202.) It engenders no positive objective test results, is not associated with any neurological or bony evidence of disease, and seems to arise from poorly understood changes in the muscle and fascia. (Stedman's Medical Dict. (5th Unabridged Lawyers' ed. 1982) p. 1391; *Sarchet* v. *Chater, supra,* at p. 306.) The only indication of its existence is the plaintiff's subjective description of pain. (*Sarchet* v. *Chater, supra,* at p. 306.)

The amount of pain and incapacity associated with myofascial pain syndrome or fibromyalgia can lead sufferers to become disabled occupationally, although this is not the usual result. (*Cline* v. *Sullivan* (8th Cir. 1991) 939 F.2d 560, 567; *Opgenorth* v. *Shalala, supra,* 897 F.Supp. 1199.) When a treating physician has diagnosed a patient as suffering from this syndrome, the mere lack of objective medical evidence to substantiate the patient's symptoms or functional limitations is not a ground to reject a finding of disability. (*Cline* v. *Sullivan, supra,* at p. 566; *Opgenorth* v. *Shalala, supra,* at pp. 1203-1204.)

Similarly, where a treating physician has diagnosed a plaintiff as suffering from myofascial pain syndrome, no objective medical evidence is needed to substantiate the plaintiff's pain and suffering. In fact, the absence of medical bills or medical testimony will not foreclose a recovery for pain and suffering. (*Hilliard* v. *A. H. Robins Co., supra,* 148 Cal.App.3d at p. 413.)

The law does not prescribe a definite standard or method to calculate compensation for pain and suffering; the jury merely is required to award an amount it finds reasonable in light of the evidence. (*Damele* v. *Mack Trucks, Inc.* (1990) 219 Cal.App.3d 29, 38 [267 Cal.Rptr. 197].) It was for the jury to assess the various witnesses' credibility concerning the injuries suffered by plaintiff and the degree of her pain.

Here, health care professionals testified that plaintiff was afflicted with cervical strain syndrome, cephalgia thoracolumbar strain/sprain, lumbosacral strain/sprain, left ankle sprain, myofascial pain syndrome, and Piriformis syndrome, a specific example of myofascial pain syndrome in the area of the Piriformis musculature. All of the health care professionals testified that plaintiff would be afflicted with pain, discomfort, and limitations for the rest of her life. In the month following the accident, she was not ambulatory without assistive devices. She required the assistance of friends and relatives for transportation, to cook her meals, and to help her with chores. Plaintiff was in treatment for her injuries for nearly a year and ceased treatment only because she no longer could afford it, although it was still beneficial to her. The amount of pain she suffers prevents her from participating in activities she used to enjoy and makes it difficult for her to find employment.

In short, evidence accepted by the jury disclosed that plaintiff suffered severe pain following the accident, presently suffers from pain on a daily basis which creates functional lifestyle limitations, and will have chronic pain for the rest of her life.

In light of this evidence, the jury verdict does not shock the conscience and it cannot be said that the verdict was the result of passion, prejudice or corruption. Thus, the trial court correctly denied defendant's motion for new trial on the ground of excessive damages. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 64-65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Scofield* v. *Critical Air Medicine, Inc., supra*, 45 Cal.App.4th at pp. 1012-1013.)

## II

 Asserting that defendant's appeal is frivolous and was undertaken for the purpose of delay, plaintiff asks us to impose sanctions against defendant for the prosecution of a frivolous appeal.

Code of Civil Procedure section 907 states: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See also Cal.

Rules of Court, rule 26(a)(2) ["[Where] the appeal is frivolous or taken solely for the purpose of delay . . . , the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."].)

We have issued an order to show cause why sanctions should not be imposed on defendant for bringing a frivolous appeal, and defendant has presented oral argument on the order to show cause.

The standards for determining whether an appeal is frivolous are contained in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]. ■ An appeal may be found frivolous and sanctions imposed when the appeal (1) "is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment," *or* (2) "indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Id.*, at p. 650.)

Counsel and their clients have a right to present issues that are arguably correct. An unsuccessful appeal should not be penalized as frivolous if it " ' "presents a unique issue which is not 'indisputably' without merit" . . . , involves facts which are "not amenable to easy analysis in terms of existing law" . . . , or makes a reasoned "argument for the extension, modification, or reversal of existing law" . . . .' " (*People* ex rel. *Dept. of Transportation* v. *Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1079, 1080 [17 Cal.Rptr.2d 19], citations omitted.)

■ Given the stringent standard of appellate review for claims of excessive damages, the evidence in support of the judgment, and the absence of meaningful analysis by defendant, we conclude this appeal "indisputably has no merit." There are no unique issues, no facts that are not amenable to easy analysis in terms of existing law, and no reasoned argument by defendant for the extension of existing law. There is no arguable basis for reversing the judgment.

Defendant's brief devotes relatively few lines to its legal argument. Moreover, the argument is conclusory and presents no meaningful, substantive analysis which might indicate that defendant's contention has some possible merit. (*Bach* v. *County of Butte* (1989) 215 Cal.App.3d 294, 310 [263 Cal.Rptr. 565].) Defendant simply asserts the damages are excessive solely because "plaintiff suffered nothing more than soft-tissue injuries." Yet, defendant cites no legal authority for the proposition that soft-tissue injuries never merit an award of $150,000 for pain and suffering even where

the evidence establishes that plaintiff will suffer for the rest of her life with chronic pain which places functional limitations on her lifestyle.

Defendant attempts to minimize plaintiff's injuries by noting that, after she was treated at the hospital, "she never again saw a medical doctor and instead went to a chiropractor." Defendant points out that Dr. Abravanel was "the only licensed physician who examined plaintiff." Other than casting aspersions on the qualifications of a chiropractor to provide an adequate medical diagnosis, opinion and course of treatment, defendant presents no legal basis for casting doubt on, or rejecting the medical opinions of, chiropractors. This kind of unsubstantiated potshot indicates defendant does not have a substantive basis for attacking the verdict.

Defendant attempts to show the damages are excessive by providing a statement of facts that omits pertinent testimony or glosses over the degree of plaintiff's pain and suffering. For example, defendant relates that when plaintiff danced at her class reunion, the next day she "had an ache on her left side." Defendant omits plaintiff's testimony that she "paid dearly for it" and was "aching all over" the following day.

Defendant lists injuries which plaintiff did not suffer and medical tests which were not administered, rather than discussing fully the evidence of plaintiff's pain and injuries. Defendant points out that plaintiff did not lose consciousness and did not have any fractures, but does not explain how this undermines the evidence that plaintiff suffers from chronic pain as a result of the accident. Defendant ignores the testimony of Dr. Abravanel, indicating that soft-tissue injuries can be very serious, not heal well, and be much worse than fractures.

At trial, defendant presented no expert testimony casting doubt on the existence of myofascial pain syndrome or the degree of impairment it can cause. Furthermore, defendant did not provide any evidence that plaintiff was malingering. Although such evidence would not provide a basis to reverse the judgment in light of the substantial evidence standard of review on appeal, it would at least demonstrate a basis for defendant's decision to pursue an appellate claim of excessive damages. Without such evidence, there is no arguable basis for finding the damages excessive, and sanctions are appropriate. (See *Damele* v. *Mack Trucks, Inc., supra,* 219 Cal.App.3d at p. 37, fn. 5.)

For the reasons stated above, we conclude this appeal is frivolous in that it "indisputably has no merit." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) Defendant is assessed sanctions in the amount of $11,000,

payable to plaintiff within 15 days after issuance of the remittitur, to compensate her for the expense consumed in defending against this frivolous appeal. (Cf. *Bach* v. *County of Butte, supra,* 215 Cal.App.3d at p. 312.) We further assess defendant sanctions in the amount of $2,500, payable to the clerk of this court within 15 days after issuance of the remittitur, to compensate the court for the expense of processing, reviewing, and deciding a frivolous appeal. (*Ibid.*)

Our opinion constitutes a written statement of our reasons for imposing sanctions. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 654.)

## DISPOSITION

The judgment is affirmed. Sanctions in the amount $13,500, to be paid as directed in this opinion, are imposed against defendant for prosecuting a frivolous appeal. In addition, defendant shall pay plaintiff's costs on appeal. (Cal. Rules of Court, rule 26(a).)

Blease, Acting P. J., and Puglia, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.