[No. D043281. Fourth Dist., Div. One. Dec. 2, 2004.]

JOSEPH TOSCANO, Plaintiff and Respondent, v.
GREENE MUSIC, Defendant and Appellant.

686

COUNSEL

Sullivan, Hill, Lewin, Rez & Engel, Candace Carroll and Brian L. Burchett for Defendant and Appellant.

Strauss & Asher, David P. Strauss and Mark A. Bennett for Plaintiff and Respondent.

---

OPINION

**O'ROURKE, J.—** ██ Joseph Toscano sued Greene Music (Greene) for promissory estoppel stemming from Greene's unfulfilled promise of employment, which caused Toscano to resign from an at-will employment position with his former employer. The court awarded Toscano damages including lost wages based on what Toscano would have earned from his former employer to the time of his retirement. Greene appeals from the judgment, contending such future wages are impermissible reliance damages and are speculative as a matter of law.[1] We hold such damages are recoverable on a promissory estoppel theory as long as they are not speculative or remote and are supported by substantial evidence, but they are not available to Toscano under the evidence in this case. Accordingly, we vacate the award of damages to Toscano for lost future earnings from September 1, 2001, to his retirement and remand the matter to the trial court for retrial limited to the amount of those damages only. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

We state the unchallenged facts as found by the trial court in its statement of decision.

In 2001, Joseph Toscano, who was employed as the general manager of a Fields Pianos (Fields) store in Santa Ana, was very unhappy with his job and decided to find other employment. Toscano contacted Michael Greene, the president of San Diego-based Greene, because he had heard that Greene was considering buying Fields's Riverside store. During the course of several conversations in June and July of 2001, Michael Greene offered Toscano a sales management position with Greene to start on September 1, 2001. On August 1, 2001, Toscano resigned from Fields in reliance on Michael Greene's promise of employment. In mid-August, however, Greene

---

[1] Greene also purported to appeal from the court's order denying its motion for new trial. That order is not directly appealable but is reviewable on appeal from the underlying judgment. (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 37, fn. 1 [90 Cal.Rptr.2d 15].)

withdrew the employment offer. Toscano later found lesser paying jobs; the first at a piano store in Mission Viejo and then at another piano store in Utah.

Toscano sued Greene for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel and interference with prospective economic advantage. Only his claim for promissory estoppel survived summary adjudication, and the matter proceeded to a bench trial.[2]

Before trial, Greene moved in limine to prevent introduction of evidence or testimony on any claimed expectancy damages. It maintained such damages were not recoverable under a theory of promissory estoppel; that because the court had already ruled that Toscano was promised only at-will employment with Greene in connection with its motion for summary adjudication, Toscano was limited to reliance damages consisting of one month's lost salary from Fields for the month of August 2001. Toscano opposed the motion, arguing his reliance damages included "lost earnings and benefits after September 1, 2001[,] based upon what he would have continued to earn had he remained working at Fields, and not relied upon Greene Music's promise of employment." The parties filed supplemental trial briefs on the damages issue.

The trial court denied Greene's motion. It ultimately ruled in Toscano's favor, awarding him $536,833 in damages. In its statement of decision, the court ruled Toscano was limited to reliance damages, but that those damages included "lost wages that the employee would have earned from the job that he quit in reliance on the employer's promise, or from a job he declined in reliance upon the promise." Based on the testimony of Toscano's accountant expert, Roberta Spoon, the court concluded Toscano's total past and future economic loss was $536,833. Spoon had testified Toscano's past lost wages were $119,061: the difference between Toscano's actual earnings and what he would have earned at Fields from August 1, 2001, to June 1, 2003. She calculated Toscano's future lost earnings and benefits—the present value of the difference between what he would have earned at Fields and what he would earn in his new job until his retirement in 2017—to be $417,772.

In its statement of decision, the court found "[w]hile the evidence indicates that Toscano had changed jobs several times in the past, and that he was looking for an opportunity to leave Fields Pianos, there is no evidence that indicates he would have left Fields for a job which pays substantially less than he was earning there. Thus, even if one assumes that Toscano would have left Fields Pianos at some time in the future, one must also assume that he would do so only for a job which paid him as much, or more, than he

---

[2] Toscano sued Greene initially in Orange County Superior Court. On Greene's successful motion to change venue the case was transferred to San Diego County.

would earn at Fields Pianos: after all, that is exactly what happened in this case. In light of this evidence, the Court finds that the sum of $536,833 reasonably reflects the total economic harm that Toscano has suffered and will continue to suffer as a result of his reliance on Greene Music's promise of employment."

Greene moved for a new trial. It argued the damage award was excessive because it included nonrecoverable expectancy damages and was speculative. Toscano maintained the award of lost wages from Fields were lost opportunity costs, a form of reliance damages. The court denied Greene's motion. This appeal followed.

## DISCUSSION

### I. *Standard of Review*

■ The parties agree that the determination of whether Toscano is entitled to a particular measure of damages is a question of law subject to de novo review. (See *Kajima/Ray Wilson v. Los Angeles Metropolitan Transp. Authority* (2000) 23 Cal.4th 305, 315 [96 Cal.Rptr.2d 747, 1 P.3d 63]; *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 579 [114 Cal.Rptr. 106, 522 P.2d 666]; *Rose v. Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 157 [166 Cal.Rptr. 16].) The amount of damages, on the other hand, is a fact question committed to the discretion of the trial judge on a motion for new trial; an award of damages will not be disturbed if it is supported by substantial evidence. (See *Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078 [81 Cal.Rptr.2d 46]; *Miller v. San Diego Gas & Electric Co.* (1963) 212 Cal.App.2d 555, 560 [28 Cal.Rptr. 126].) The evidence is insufficient to support a damage award only when no reasonable interpretation of the record supports the figure. (*San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918, 931 [62 Cal.Rptr.2d 121].)

### II. *Promissory Estoppel Damages May Include an Employee's Definite, Nonspeculative Loss of Future Wages From Prior at-will Employment*

No California case has squarely addressed the damages question presented: whether a plaintiff who resigns from at-will employment in reliance on an unfulfilled promise of other employment may recover, under a promissory estoppel theory, reliance damages based on wages lost from his or her prior employment. Relying on several out-of-state authorities, Greene contends reliance damages do not include lost future earnings, because future earnings represent "expectancy" damages that are not recoverable under promissory estoppel, and an employee cannot prove entitlement to such earnings because there is no guarantee of future employment in an at-will setting. Greene

maintains the only lost income recoverable in this case is Toscano's wages lost between the time he left his former job and the time the new promised job would have begun.

Toscano concedes the weight of authority prevents an employee in his circumstances from recovering future lost wages from the *prospective* employer that induced him to resign his employment; he asserts, however, the law permits the employee to recover what he would have earned in the future from his *former* employer as a component of reliance damages. Greene maintains this measure of recovery is consistent with the equitable nature of promissory estoppel and with the trend in promissory estoppel cases permitting lost opportunity costs incurred in reliance on the defendant's promise.

■ As we explain, we hold a plaintiff's lost future wages from the former at-will employer are recoverable under a promissory estoppel theory as long as they are not speculative or remote, and are supported by substantial evidence.

■ "In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' [Citations.] Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority, supra,* 23 Cal.4th at p. 310 (*Kajima/Ray*); see Rest.2d Contracts, § 90 subd. (1) p. 242; *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 6 [151 Cal.Rptr. 323, 587 P.2d 1136] (*C & K*.) The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages "measured by the extent of the obligation assumed and not performed." (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 249–250, p. 251.)

■ The California Supreme Court has observed that " '[u]nless there is unjust enrichment of the promisor, [promissory estoppel] damages should not put the promisee in a better position than performance of the promise would have put him.' " (*Kajima/Ray, supra,* 23 Cal.4th at p. 316, quoting Rest.2d contract, § 90, com. d, p. 244.) However, such a limitation does not preclude recovery of some measure of future income relinquished as a result of a plaintiff's detrimental reliance. "Conceptually, promissory estoppel is distinct from contract in that the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for consideration required as an element of

an enforceable contract. There appears to be no rational basis for distinguishing the two situations in terms of the *damages* that may be recovered; both may involve the problem of ascertaining a future loss of profits, actually a problem of presenting adequate proof. Complete contractual recovery may include, under some circumstances, loss of profits when the loss is definite rather than speculative." (*Signal Hill Aviation Company, Inc. v. Bill Stroppe* (1979) 96 Cal.App.3d 627, 640 [158 Cal.Rptr. 178] (*Signal Hill*).) Because the doctrine is equitable in nature, the court should have broad judicial discretion to fashion remedies in the interests of justice. (*Ibid.*; see *C & K, supra*, 23 Cal.3d at p. 8.)

The use of judicial discretion to achieve justice in a promissory estoppel case is evident in *Signal Hill*. There, in reliance on a promise to assign a lease of certain airport property, the plaintiff corporation moved onto the property and began making rental payments, repairs, and improvements. (*Signal Hill, supra*, 96 Cal.App.3d at pp. 632–633.) The defendant ultimately refused to execute an assignment of the lease, and sublet the renovated airport property to others for a monthly amount far in excess of what he was required to pay under the lease. (*Id.* at p. 633.) The trial court awarded the plaintiff those profits the defendant had and would receive from the lease after breach under both promissory estoppel and constructive trust theories. (*Id.* at p. 634.)

On appeal the defendant contended the "loss of profits" damage award was error because promissory estoppel damages "should be limited to those sums actually incurred by the promisee in reliance on the promise." (*Signal Hill, supra*, 96 Cal.App.3d at p. 640.) The Court of Appeal rejected that argument, noting that the California Supreme Court has emphasized the exercise of judicial discretion in promissory estoppel cases to fashion relief to do justice. (*Ibid.*) It held the net profits derived from the defendant were properly awarded "on equitable grounds" as the result of both promissory estoppel and constructive trust theories. (*Id.* at pp. 640–641.)

■ Given the equitable underpinnings of the promissory estoppel doctrine, we hold that a plaintiff such as Toscano, who relinquished his job in reliance on an unfulfilled promise of employment, may on an appropriate showing recover the lost wages he would have expected to earn from his former employer but for the defendant's promise. Under these circumstances, such a damage measure is in keeping with the equitable nature of promissory estoppel. "The object of equity is to do right and justice. It 'does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention. "It has always been the pride of courts of equity that they will so mold and adjust their decrees as to award substantial justice according

to the requirements of the varying complications that may be presented to them for adjudication." [Citation.]' [Citation.] 'The powers of a court of equity, dealing with the subject-matters within its jurisdiction, are not cribbed or confined by the rigid rules of law. From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees .... It is of the very essence of equity that its powers should be so broad as to be capable of dealing with novel conditions. [Citation.]' [Citation.] Equity acts ' "in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed." ' " (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 770–771 [110 Cal.Rptr.2d 861].)

■ We apply the settled rule, however, that the court's damage award in these circumstances must not be speculative, remote, contingent or merely possible. (*Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 989 [105 Cal.Rptr.2d 88]; *Frustuck v. City of Fairfax* (1963) 212 Cal.App.2d 345, 367–368 [28 Cal.Rptr. 357].) Analogizing to a claim for lost profits, we conclude that damages for the loss of future earnings in this context are recoverable " 'where the evidence makes reasonably certain their occurrence and extent.' " (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 883 [116 Cal.Rptr.2d 158].)

■ Our holding necessarily rejects the notion that the at-will nature of Toscano's former employment with Fields (undisputed by the parties here) is a strict impediment to recovery of future wages that Toscano would have earned at Fields had he not relied on Greene's promise. It is well settled that at-will contractual relations can be the subject of claims for intentional interference with contract, based on the principle that "[a] third party's 'interference with an at-will contract is actionable interference with the contractual relationship' *because the contractual relationship is at the will of the parties, not at the will of outsiders*." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148 [17 Cal.Rptr.3d 289, 95 P.3d 513], italics added, citing *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1127 [270 Cal.Rptr. 1, 791 P.2d 587]; *Speegle v. Board of Fire Underwriters* (1949) 29 Cal.2d 34, 39 [172 P.2d 867].) In *Reeves*, the California Supreme Court made it clear that that tort can be based on interference with an at-will employment relationship. (*Reeves*, at p. 1148, citing *Kozlowsky v. Westminster Nat. Bank* (1970) 6 Cal.App.3d 593, 598 [86 Cal.Rptr. 52] ["the fact that the Bank was privileged to discharge plaintiff at any time does not necessarily privilege a third party unjustifiably to induce the termination"].) We see no reason why this principle should not extend to permit recovery of damages under the equitable theory of promissory estoppel here, where there is no dispute Greene induced Toscano to terminate his at-will employment relationship in reliance on an unfulfilled job offer. The trial court correctly concluded that

under these circumstances, Toscano suffered a compensable loss at the hands of a third party. The only limitation on Toscano's recovery is that the fact and extent of his lost future earnings must be proven with reasonable certainty.

■ Greene's out-of-state authorities do not convince us to reach a different conclusion. Both *Wyatt v. Bellsouth, Inc.* (M.D.Ala. 1998) 18 F.Supp.2d 1324 and *Zenor v. El Paso Healthcare System, Ltd.* (5th Cir. 1999) 176 F.3d 847 involve instances where employees who claimed they were wrongfully terminated sought to recover lost future wages from their at-will employer under promissory estoppel theories; they are not instances, as here, where a third party has wrongfully induced an employee to relinquish his or her at-will employment. In *Wyatt*, the court strictly limited reliance damages to damages actually resulting from the plaintiff's detrimental reliance and refused to "include the benefit of altering the employment status from an at-will relationship to a permanent one which requires just cause for termination." (*Wyatt*, 18 F.Supp.2d at p. 1327.) In *Zenor*, the court classified the plaintiff's claim for future earnings as expectancy damages, which impermissibly gave the plaintiff the benefit of his bargain, and also held an award for past earnings to the date of trial and future earnings could not be sustained because the plaintiff had no right to continued employment with his employer. (*Zenor*, 176 F.3d at p. 866.) Unlike these cases, Toscano's possible recovery of lost earnings from his relinquished at-will employment does not contradict or undermine California's doctrine of at-will employment when those damages are assessed against the third party wrongdoer, not the at-will employer.

In *Pepsi-Cola General Bottlers, Inc. v. Woods* (Ind.Ct.App. 1982) 440 N.E.2d 696, the plaintiff quit former employment in reliance on a promise of employment with Pepsi. Under those circumstances, the court found she had a right of action under promissory estoppel, however it refused to permit her to recover lost wages that she would have earned *from Pepsi*, because such damages would give her the benefit of her bargain. (*Id.* at p. 699.) The court concluded the plaintiff was entitled to damages for expenses incurred in reliance on Pepsi's promise, but that there was insufficient proof of out-of-pocket expenses to compute such damages. (*Ibid.*) The case does not address the issue presented here, whether damages for future earnings expected from the former employer may be recovered from the third party promisor.

### III. *Toscano's Damages Are Speculative*

■ Code of Civil Procedure section 657, subdivision (5) provides that a verdict may be vacated or a new trial granted by the trial court for excessive damages. We conclude that even giving deference to the trial court's ruling

and drawing all inferences in Toscano's favor, the evidence was too speculative to lend support to the trial court's award of Toscano's lost future earnings from September 1, 2001, to his retirement.[3]

Roberta Spoon, Toscano's damages expert, testified that in calculating Toscano's lost wages for the remainder of his career, "[a]ll I have done is arithmetic. I have simply analyzed the numbers." She testified she was not aware that Toscano's employment with Fields called for any specific tenure. Indeed, Spoon admitted Toscano could have quit or been fired from that job from the time he resigned to the present. She simply assumed Toscano would have continued employment with Fields or another employer at a comparable salary, observing that he had never in the past changed employers for anything other than a pay increase.

Spoon's testimony does not establish Toscano had a definite expectation of continued employment with Fields for any particular period of time. Even drawing all inferences in Toscano's favor, it is evident her supposition was based only on Toscano's history of remaining with his employers until offered new employment. However, *Toscano's* intentions or practices are not relevant to whether he could expect to remain with Fields until his retirement, where his employment with Fields was at will. Even taking that evidence as true, evidence of Toscano's intentions does not establish with any reasonable certainty that Fields, an at-will employer who had the right to terminate Toscano at any time for any reason,[4] had some different understanding of the terms of Toscano's employment, or that it would have continued to employ him until the end of his career. Neither party presented testimony from Jerry Goldman, Toscano's boss at Fields. An expert's opinion must not be based upon speculative or conjectural data. If the expert's opinion is not based upon facts otherwise proved or assumes facts contrary to the only proof, it cannot rise to the dignity of substantial evidence. (*Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135–1136 [234 Cal.Rptr. 630]; *Hyatt v. Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 338–339 [145 Cal.Rptr. 47].) Although the *fact* of Toscano's damage was established, Spoon's conclusions as to the *extent* of Toscano's lost employment were wholly conjectural. We cannot ascertain with any certainty how Spoon reached her

---

[3] Greene conceded below and concedes here that Toscano is entitled to recover damages for one month of salary from Fields, from the date of his resignation on August 1, 2001, to his start-date with Greene, September 1, 2001.

[4] "An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice." (*Guz v. Bechtel Nat'l, Inc.* (2000) 24 Cal.4th 317, 335 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

assumption as to Toscano's continued employment, particularly in view of her admission that Fields could have fired Toscano for any reason.[5]

The trial court further based its damages award on the fact there was "no evidence that indicates [Toscano] would have left Fields for a job which pays substantially less than he was earning there." But as we have stated, such evidence is insufficient to support a claim of lost future income from Fields to Toscano's retirement. As a consequence, we vacate the award of Toscano's lost wages from Fields calculated from September 1, 2001, to the date of his retirement in 2017 and remand the matter for a new trial on the matter.

## DISPOSITION

The award of future earnings calculated from September 1, 2001, to the date of Toscano's retirement in 2017 is vacated and the matter remanded for a new trial on the issue of damages only. The judgment is otherwise affirmed. The parties are to bear their own costs on appeal.

Benke, Acting P. J., and Huffman, J., concurred.

---

[5] Having reached this conclusion, we need not consider, and therefore deny, Greene's request that we judicially notice certain Bureau of Labor Statistics tables, which were not considered by the trial court in any event. (See *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242] [appellate court may properly decline to take judicial notice of matters that should have been presented to the trial court for its consideration in the first instance]; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [58 Cal.Rptr.2d 899, 926 P.2d 1085].) Greene does not advance any reason for its failure to request the trial court to take judicial notice of these items.