Filed 9/4/20  O'Ferral v. SRP 2012-4, LLC CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115. |
|---|

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

VICTORIA O'FERRAL,

    Plaintiff and Appellant,

v.

SRP 2012-4, LLC et al.,

    Defendants and Respondents.

E071762

(Super.Ct.No. CIVDS1719674)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Wilfred J. Schneider, Jr., Judge.  Affirmed.

Victoria O'Ferral, in pro. per., for Plaintiff and Appellant.

ZBS Law, and Bradford E. Klein, for Defendants and Respondents.

1

I.

INTRODUCTION

Plaintiff and appellant, Victoria O'Ferral, appeals a judgment of dismissal of her wrongful foreclosure action against defendants and respondents, SRP 2012-4, LLC and Sortis Financial, Inc.[1] Plaintiff's action was dismissed after the trial court sustained defendants' demurrer to plaintiff's second amended complaint (SAC), without leave to amend. Plaintiff contends defendants did not have legal authority to foreclose on her residence (the Property) under a junior home loan (second loan), secured by a second deed of trust (second DOT). She argues defendants did not provide proper notice of the foreclosure sale, the foreclosure sale was void because it was based on fabricated documents, and the foreclosure documents and procedures did not comply with state and federal foreclosure laws. Plaintiff further argues she did not owe anything on the second loan. She asserts the first and second trust deeds on the Property were consolidated and she then made single monthly payments toward the consolidated loan. Nevertheless, defendants, as the holder and servicer of the second DOT, foreclosed on the Property, claiming she had defaulted on the second loan. Plaintiff further contends that the trial court should have permitted her to amend her complaint to clarify her claims.

---

[1] Sortis Financial, Inc. was erroneously sued as Clear Springs Loan Management, LLC. Sortis Financial, Inc. was formerly known as Clear Springs Loan Management, LLS, which was the servicer of the second loan.

We conclude, based on the facts alleged in the SAC and attached loan and foreclosure documents, that plaintiff failed to allege a viable claim against defendants and has not demonstrated an ability to successfully amend her complaint. Therefore, the trial court did not err in sustaining defendants' demurrer without leave to amend. The judgment of dismissal is thus affirmed.

II.

FACTS AND PROCEDURAL BACKGROUND

The following facts are taken from plaintiff's operative complaint, the SAC, and from the documents attached to the SAC. In November 2006, plaintiff executed two loans, both secured by the Property. The senior loan (first loan) was for $287,920. The junior loan (second loan) was for $71,980. Both loans were secured by deeds of trust naming plaintiff as the borrower; Resmae Mortgage Corporation (Resmae) as the lender; Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and nominee for the lender; and First American Title Company (First American) as the trustee. Both deeds of trust were recorded in November 2006.

Plaintiff alleged that until 2009, she made monthly installment payments on the two loans in accordance with the terms of the original financing agreements. In 2009, plaintiff stopped making payments on the second loan because she believed the loan had been paid in full.

3

A. *Foreclosure Proceedings*

In May 2016, MERS assigned the beneficial interest in the second loan and second DOT to SRP 2012-4, LLC (SRP), in place of the lender, Resmae. The assignment was recorded on July 21, 2016.

In September 2016, T.D. Service Company (T.D.) was substituted in as trustee for the second DOT, in place of First American. The Substitution of Trustee was recorded in November 2016.

On November 21, 2016, T.D. recorded a notice of default on the second loan and election to sell (NOD). The notice advised plaintiff that the Property was in foreclosure because she was behind in her payments on the second loan, with plaintiff owing $77,007.50. The notice further stated that plaintiff had not made any payments on the second loan since May 1, 2008.

In February 2017, T.D. executed a Notice of Trustee's Sale (NOTS), recorded the following day. The NOTS stated plaintiff was in default on the second loan and a nonjudicial foreclosure sale was therefore scheduled for March 15, 2017. The trustee's sale was postponed multiple times. On September 18, 2017, the trustee's sale proceeded as noticed. SRP, as the foreclosing beneficiary, bought back the Property.

On September 19, 2017, T.D. executed a Trustee's Deed Upon Sale, which stated that, as a result of plaintiff's default on the second loan, the trustee sold the Property to SRP at a public auction on September 18, 2017, for $74,000. The Trustee's Deed Upon Sale was recorded on September 20, 2017.

4

B. *Plaintiff's Wrongful Foreclosure Complaint*

On October 6, 2017, plaintiff filed the instant lawsuit against defendants. Plaintiff attempted to allege 13 causes of action. Defendants demurred to plaintiff's complaint, first amended complaint, and second amended complaint (the SAC). Plaintiff initially named as defendants Clear Springs Loan Management, LLs (Clear Springs); SRP; Strategic Recovery Group; and Ocwen Loan Servicing, LLC (Ocwen). Plaintiff later named Sortis Financial, Inc., erroneously sued as Clear Springs, and added First American as a doe defendant. Plaintiff's SAC includes the following causes of action: (1) breach of contract; (2) breach of good faith and fair dealing; (3) estoppel; (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) fraudulent promise without intention to perform; (7) quiet title; (8) cancellation of instruments pursuant to Civil Code[2] section 3412; (9) violation of Commercial Code section 3118; (10) unfair debt collection practices; (11) negligence; (12) unfair business practices; and (13) wrongful foreclosure. Plaintiff attached to her verified SAC, the second DOT, assignment of the second DOT to SRP, substitution of T.D. as Trustee, NOD under the second DOT, NOTS, and Trustee's Deed Upon Sale.

---

[2] Unless otherwise indicated, all further statutory references are to the Civil Code.

5

Plaintiff's SAC stated the following facts and conclusory allegations. In 2006, plaintiff purchased the Property. In March 2007, Popular Mortgage Servicing, Inc. (Popular) allegedly either purchased or began servicing the second loan. In 2008, plaintiff hired a law firm to assist her in modifying the first loan. In 2009, Popular advised plaintiff that the second loan no longer existed because it was paid off by the first loan. A few days later, plaintiff's attorney sent her a letter reiterating that the second loan had been paid off by the first loan. Thereafter, for over seven years, defendants and their predecessors did not attempt to collect on the second loan.

On October 23, 2016, an attorney contacted plaintiff at the Property and told her the Property was in foreclosure because she had defaulted on the second loan. The attorney advised plaintiff to contact the servicer of the first loan, Ocwen, and ask who was foreclosing on the Property. In the presence of the attorney, plaintiff contacted Ocwen, which informed her that the attorney who told her she was in default was "a fraud" and there was no junior lien. An Ocwen representative further told her that only Ocwen could foreclose on the Property under the first loan, and plaintiff was current on her payments on the first loan. On March 5, 2017, the attorney returned and told plaintiff the Property was going to be sold. Plaintiff called Ocwen in the presence of the attorney. An Ocwen representative yelled at the attorney to get off the Property, claiming no other entity had the right to foreclose. A week before the Property was scheduled to be sold, plaintiff received a NOTS. On March 10, 2017, she called Ocwen. An Ocwen representative told her no entity other than Ocwen could foreclose on the Property and

6

there was no junior lien. The Ocwen representative said the trustee notice was a fraud and to ignore it.

Plaintiff received calls from representatives of SRP, Sortis Financial, Inc. (Sortis), and Strategic Recovery Group (Strategic),[3] who fraudulently told her that the trustee's sale of the Property would not take place. Specifically, on September 17, 2017, the day before the noticed trustee's sale, SRP's representative, Eric Hammar, fraudulently told plaintiff the trustee's sale wound not go forward and that she should disregard all notices that threatened the sale of the Property. Contrary to these representations, the trustee's sale proceeded on September 18, 2017, as noticed. SRP, as the foreclosing beneficiary, bought back the Property. Plaintiff called Ocwen and reported that the Property had been sold unlawfully. An Ocwen representative told plaintiff she should retain counsel because defendants had fraudulently foreclosed on the Property.

On September 19, 2017, plaintiff called Sortis to determine whether the trustee's sale could be rescinded. Plaintiff told the Sortis representative, Erica Simmons, plaintiff could pay $10,000 to settle the matter. Simmons said that amount might be deemed acceptable and sent plaintiff a loss mitigation application. On September 21, 2017, SRP representative, Hammar, told plaintiff that $10,000 was insufficient to settle the matter but $20,000 would be sufficient to rescind the Property sale. Hammar also said plaintiff would have to attest that there was no fraud in connection with the Property sale. Plaintiff was falsely led to believe that if she paid this amount, the matter would be

---

[3] Strategic's alleged involvement in this matter is unclear from the record.

settled, the sale rescinded, and SRP's unlawful detainer action to remove plaintiff from the Property withdrawn.

Plaintiff further alleged in the SAC that she believed there was no second loan in default, the trustee's sale was unlawful, defendants did not have authority to foreclose on the Property, Hammar defrauded her, and the sale of the Property would not be rescinded even upon plaintiff paying $20,000. Therefore, on October 6, 2017, plaintiff filed the instant lawsuit against defendants. Plaintiff alleged the tender rule, requiring payment of the outstanding debt, did not apply and, even if it did, she was willing and able to tender an amount deemed necessary by the court in order to proceed with her lawsuit.

Plaintiff further alleged that the NOD was fraudulent, invalid, and failed to provide the required notice. Also, defendants were not authorized to collect on the second loan because it had already been paid in full by the first loan in 2009. Plaintiff alleged the NOD did not comply with the second DOT provision which stated that, before accelerating the loan, the lender must give notice to the borrower of the alleged breach, the opportunity to cure the breach, and the borrower's right to bring court action to assert the non-existence of a default or other defense. Plaintiff alleged that the NOD was fraudulent because it stated that, after expiration of the 10-day period to cure the breach, plaintiff only had the right to stop the sale of the Property by paying the entire amount demanded, and was not notified she also had the right to challenge the default in court. In addition, the NOTS  was invalid because it was provided after an invalid and

8

fraudulent NOD, and defendants did not have authority to proceed with the trustee's sale of the Property.

C. *Hearing on Defendants' Demurrer to the SAC*

On September 24, 2018, the trial court heard defendants' demurrer to the SAC. Plaintiff acknowledged at the hearing that she had not filed opposition but requested a continuance to allow her to file a third amended complaint in response to defendants' demurrer. The court denied plaintiff's request to continue the hearing and her request to file a third amended complaint. In response to the court asking if she had anything she wanted to say in opposition to the demurrer, plaintiff indicated she had new evidence and documents but did not elaborate. The court responded that the matter was ordered taken under submission. Thereafter, the court sustained defendants' demurrer without leave to amend and dismissed the action with prejudice.

On October 2, 2018, plaintiff filed a motion to set aside the dismissal under Code of Civil Procedure section 437, subdivision (c), based on excusable error in failing to file opposition to defendants' demurrer to the SAC. Defendants filed opposition, and the trial court denied the motion as to defendants, but reinstated the action as to Ocwen.

9

III.

LAW APPLICABLE TO REVIEWING

ORDER SUSTAINING A DEMURRER

Our sole task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) When reviewing a ruling on a demurrer, ""'[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]'" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 107.)

"'On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.'" (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 607.) "If the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. [Citation.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501; see *Westamerica Bank v. City of Berkeley*, *supra*, at p. 607.)

10

IV.

DISCUSSION

We begin with the following basic concepts applicable to real property loans also commonly known as property mortgages. "A real property loan generally involves two documents, a promissory note and a security instrument. The security instrument secures the promissory note. This instrument 'entitles the lender to reach some asset of the debtor if the note is not paid. In California, the security instrument is most commonly a deed of trust (with the debtor and creditor known as trustor and beneficiary and a neutral third party known as trustee).'" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235, quoting Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed.1990) § 1.3, p. 5; see *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 438-439.)

"'A security interest cannot exist without an underlying obligation, and therefore a mortgage or deed of trust is generally extinguished by either payment or sale of the property in an amount which satisfies the lien. [Citations.]' [Citations.] Proper tender of payment also may extinguish the lien." (*Nguyen v. Calhoun*, *supra*, 105 Cal.App.4th at p. 439.) "'The trustor-mortgagor or the person who alleges that a debt has been paid has the burden of proving payment.'" (*Id*. at p. 440, quoting 4 Miller & Starr, Cal. Real Estate, (3d ed. 2000) Deeds of Trust and Mortgages, § 10:71, p. 217, fn. omitted.) "[O]n adequate proof that payment has been properly made or tendered, the debt is satisfied and the lien is extinguished. If the lien has been extinguished, there can be no foreclosure sale. (*Lichty v. Whitney* (1947) 80 Cal.App.2d 696, 702 [valid tender released security;

11

subsequent trustee's sale was void]; cf. *Bisno v. Sax* (1959) 175 Cal.App.2d 714, 724 [accepting payment of amount in default precluded foreclosure].)  On the other hand, if the lien has not been extinguished and the debt is in default, the lender may institute nonjudicial foreclosure proceedings." (*Nguyen v. Calhoun*, *supra*, at p. 440.)

"[S]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; *Nguyen v. Calhoun*, *supra*, 105 Cal.App.4th at p. 440.)  "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." (*Moeller v. Lien*, *supra*, at p. 831; *Nguyen v. Calhoun*, *supra*, at p. 440.)

"'If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser. [Citations.]'  [Citations.]  [¶] 'The conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor.'  [Citation.]  A bona fide purchaser is one who pays value for the property without notice of any adverse interest or of any irregularity in the sale proceedings." (*Nguyen v. Calhoun*, *supra*, 105 Cal.App.4th at pp. 441-442; see *Moeller v. Lien*, *supra*, 25 Cal.App.4th at pp. 831-832.)

12

Here, plaintiff's SAC contains conclusionary allegations that the second loan was paid off. Such conclusionary allegations are insufficient and inadequate here, where the complaint allegations and attached documents show plaintiff defaulted on the second loan for years, payment of the second loan was never made in full, and plaintiff never tendered payment of the amount due on the second loan. Therefore, during the nonjudicial foreclosure proceedings, the trustee, T.D., properly exercised the power of sale provided by the second DOT. (*Nguyen v. Calhoun*, *supra*, 105 Cal.App.4th at p. 440.)

Plaintiff alleged that she was not required to make payments on the second loan because, in 2009, her attorney and Popular told her that the second loan was paid off when consolidated into the first loan. She therefore believed she did not have to make separate payments on the second loan. Thereafter, she did not make any further payments on the second loan and, for over seven years, defendants did not attempt to collect on the second loan until an attorney contacted her in 2016, and told plaintiff her property was in foreclosure because she was in default on the second loan. These alleged facts and circumstances, as well as the attached loan documents, do not show, up to this point, any wrongdoing on the part of defendants, who were the holder of a beneficiary interest in the second loan and the servicer of the second loan.

Once plaintiff was notified she was in default on the second loan, plaintiff contacted the servicer of the first loan, Ocwen, and was allegedly incorrectly told there was no second loan and plaintiff was not in default on the first loan. Instead of contacting defendants and responding to the information provided in the NOD and NOTS

13

under the second DOT, plaintiff continued to contact and rely on misinformation provided by Ocwen, the servicer of the first loan, which was apparently uninformed about the existence of the second loan.

Plaintiff alleged the second loan merged with the first loan but the documents attached to the SAC demonstrate that, as a matter of law, this was not the case. "The well pled allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint. Indeed, the contents of an incorporated document (in this case, the agreement) will take precedence over and supersede any inconsistent or contrary allegations set out in the pleading. In the case of such a conflict, we will look solely to the attached exhibit. [Citations.]" (*Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400, 1409; see *Moore v. Regents of University of California*, *supra*, 51 Cal.3d at p. 125.)

Plaintiff alleged that on September 17, 2017, the day before the trustee's sale, Hammar, an authorized agent for SRP, orally promised plaintiff that the trustee's sale was not going to proceed the following day and plaintiff should disregard the notice of trustee's sale. While what Hammar allegedly told plaintiff was not true, plaintiff failed to allege Hammar had authority to make such a promise on behalf of SRP or that relying on such a promise was reasonable. Furthermore, allegations of plaintiff's post-trustee-sale discussions with Hammar to rescind the trustee's sale of the Property also do not show any wrongdoing on the part of defendants. Defendants had a legal right to foreclose on the second loan and did not enter into any enforceable agreement to rescind the trustee's

14

sale. In addition, there are no allegations plaintiff ever agreed to pay anything toward resolving the matter or that defendants agreed to rescind the sale.

Due to no fault of defendants, plaintiff allegedly believed there was no second loan in default, the trustee's sale was unlawful, and defendants did not have authority to foreclose on the Property. As a consequence, plaintiff filed the instant lawsuit against defendants but has not alleged any facts establishing unlawful acts or omissions committed by defendants, and the documents attached to the SAC confirm that defendants lawfully proceeded with nonjudicial foreclosure on the second loan.

Plaintiff's conclusory allegations of wrongdoing regarding the second loan and foreclosure documents and proceedings are unsupported by any alleged facts or by the documents attached to the SAC. We do not assume the truth of plaintiff's factually unsupported contentions, deductions, and conclusions. (*Moore v. Regents of University of California*, *supra*, 51 Cal.3d at p. 125.) We conclude, as discussed further below, that none of plaintiff's 13 causes of action state sufficient facts to support liability as a matter of law.

A. *Claims Founded on Contract Liability*

Plaintiff's contract causes of action include causes of action for breach of contract (first cause of action), breach of implied duty of good faith and fair dealing (second cause of action), and promissory estoppel (third cause of action). Plaintiff alleged in the first cause of action for breach of contract that defendants, who either had a beneficiary interest in the second DOT (SRP) or serviced the second loan (Sortis), breached the

second DOT agreement by "failing to provide Plaintiff[] with notice of Plaintiff's right to bring a lawsuit to allege defenses to the acceleration and sale and, instead, executed a fraudulent NOD that falsely asserts that no such options exists." The SAC's factual allegations and attached documents, however, do not support the conclusory allegations regarding the NOD or other foreclosure documents. As to the allegation the NOD did not mention plaintiff had a right to bring a lawsuit asserting defenses to the trustee's sale, this was not a material breach of the second DOT supporting liability against defendants.

"A bedrock principle of California contract law is that 'he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.' *Pry Corp. of America v. Leach* [(1960)] 177 Cal.App.2d 632, [639] [citation]. *See also Loral Corp. v. Moyes* [(1985)] 174 Cal.App.3d 268, 219 ('The requirement of performance may be excused by the other party's breach.'). This is a contract rule of general application and is thus available . . . as a defense." (*Brown v. Dillard's, Inc.* (9th Cir. 2005) 430 F.3d 1004, 1010; see also *De La Falaise v. Gaumont-British Picture Corp.* (1940) 39 Cal.App.2d 461, 468-469 ["It is well recognized that a failure to comply with conditions precedent not only will prevent an action by the defaulting party to enforce the contract, but also will sustain an action by the other party for a breach thereof."].)

16

The SAC's allegations and attached loan and foreclosure documents establish that, as a matter of law, plaintiff did not comply with the conditions of the second loan and second DOT. Plaintiff breached the second DOT by not making the required monthly payments on the second loan since 2009, years before defendants proceeded with foreclosing on the second loan in 2016. Regardless of whether defendant included in the NOD that plaintiff had the right to litigate rather than pay the outstanding debt, any such deficiency in the NOD was insufficient to support liability against defendants where plaintiff defaulted on the second DOT and failed to allege any damages caused by the alleged breach.

Likewise, plaintiff's cause of action for breach of the covenant of good faith and fair dealing lacks merit. (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1344 ["Breach of the covenant of good faith and fair dealing is nothing more than a cause of action for breach of contract."].) Plaintiff alleged in the second cause of action for breach of the covenant of good faith and fair dealing, that defendants breached the covenant of good faith and fair dealing by failing to provide valid foreclosure documents, such as the NOD; wrongfully proceeding with the trustee's sale when the second loan was paid in full; not having authority to collect on the second loan; fraudulently advising plaintiff that the trustee's sale would not occur; and, after the trustee's sale, attempting to fraudulently secure $20,000 from plaintiff without any intention of rescinding the trustee's sale.

17

"The covenant of good faith and fair dealing is imposed upon each party to a contract.  [Citation.]  This fundamental covenant prevents the contracting parties from taking actions that will deprive another party of the benefits of the agreement.  [Citation.]  The covenant also requires each party to do everything the contract presupposes the party will do to accomplish the agreement's purposes."  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 524.)  "'[T]he scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.'  . . .  Thus, it is well settled the implied covenant does not extend so far as to impose enforceable duties that are beyond the scope of the contract, nor does the covenant prohibit actions that are expressly authorized by the contract's terms."  (*Id.* at pp. 524-525; see *Carma Developers (Cal.)*, *Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373-374.)

While defendants were required to comply with statutory foreclosure requirements when proceeding with nonjudicial foreclosure, defendants were not subject to liability for breach of the good faith covenant based on the DOT terms after plaintiff breached the second DOT by defaulting on the second loan.  Plaintiff's conclusory allegations to the contrary are unsupported by any facts.  Furthermore, SAC factual allegations and documents attached to the SAC establish plaintiff defaulted on the second loan, and defendants properly and legally proceeded with the trustee's sale, an action expressly authorized by the terms of the second DOT.

18

The allegation that, after the foreclosure sale, plaintiff and defendants attempted to negotiate a rescission of the trustee's sale by defendants attempting to secure $20,000 from plaintiff concerns a matter beyond the scope of the terms of the second DOT.  Such conduct thus was not subject to the good faith covenant founded on the second DOT agreement and therefore does not support plaintiff's cause of action for breach of the good faith covenant.

Plaintiff failed to allege a valid cause of action for promissory estoppel. "'Conceptually, promissory estoppel is distinct from contract in that the promisee's *justifiable and detrimental reliance* on the promise is regarded as a substitute for consideration required as an element of an enforceable contract.'" (*Toscano v. Greene Music* (2004) 124 Cal.App.4th 685, 692-693, quoting *Signal Hill Aviation Company, Inc. v. Bill Stroppe* (1979) 96 Cal.App.3d 627, 640, italics added.)  "The elements of promissory estoppel are (1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" (*Toscano v. Greene Music*, *supra*, at p. 692.)

Plaintiff alleged in the promissory estoppel cause of action that on September 17, 2017, Hammar, an authorized agent for defendants, orally promised plaintiff that the trustee's sale would not go forward on September 18, 2017, as noticed, and plaintiff should disregard the NOTS.  However, the next day, defendants proceeded with the trustee's sale, as noticed.  Plaintiff further alleged she relied on Hammar's promise by not

taking any action to prevent the sale from proceeding. Plaintiff alleged she suffered detriment by being forced into foreclosure.

Plaintiff failed to allege breach of a promise by defendants or that plaintiff justifiably relied on such a promise to her detriment. Hammar's alleged inaccurate statements the trustee's sale would not go forward as noticed did not constitute a clear promise by defendants but merely an incorrect representation by Hammar regarding the status of the trustee's sale. In addition, there was no detrimental reliance. Plaintiff alleged the detriment she suffered was being forced into foreclosure. However, plaintiff was not "forced" into foreclosure. She was responsible for the foreclosure proceedings because for years she had defaulted on the second DOT. Plaintiff further failed to allege she would have done anything differently had Hammar not told her the trustee's sale would not go forward.

B. *Fraud Claims*

Plaintiff's fraud-related causes of action include fraudulent misrepresentation (fourth cause of action), negligent misrepresentation (fifth cause of action), and fraudulent promise without intention to perform (sixth cause of action).

1. *Law Applicable to Plaintiff's Fraud-Related Claims*

"'Every element of the cause of action for fraud must be alleged in the proper manner and the facts constituting the fraud must be alleged with sufficient specificity to allow defendant to understand fully the nature of the charge made.'" (*Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 73, quoting *Roberts v. Ball, Hunt, Hart, Brown &*

20

*Baerwitz* (1976) 57 Cal.App.3d 104, 109; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 ["In California, fraud must be pled specifically; general and conclusory allegations do not suffice."]  This specificity requirement applies to any action sounding in fraud, including negligent misrepresentation claims.  (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 803; *Small v. Fritz Co.'s, Inc.* (2003) 30 Cal.4th 167, 184; *Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 215-216.)

Thus, "'"the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect."'  [Citation.]  [¶]  This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'"  (*Stansfield v. Starkey*, *supra*, 220 Cal.App.3d at p. 73; see *Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645.)

A fraud action against a corporate employer requires that "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." (§ 3294, subd. (b).)  Thus, "[a] plaintiff's burden in asserting a fraud claim against a corporate employer is even greater.  In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645, quoting *Tarmann v. State Farm Mutual Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157.)

The elements of a fraud include: "a representation, usually of fact, which is false, knowledge of its falsity, intent to defraud, justifiable reliance upon the misrepresentation, and damage resulting from that justifiable reliance." (*Stansfield v. Starkey*, *supra*, 220 Cal.App.3d at pp. 72-73; see §§ 1709, 1710.)

The elements of negligent misrepresentation are: "'[M]isrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage.'" (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 983.)

The elements of promissory fraud are: "(1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1060) "To sufficiently plead the first requirement, that the defendant made a promise, the complaint must state '"*facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'" [Citation.]' [Citation.] As for the second requirement, the falsity of that promise is sufficiently pled with a general allegation the promise was made without an intention of performance. [Citation.]" (*Ibid.*)

2. *Plaintiff's Fraud-Related Allegations*

Plaintiff alleged in her fraud cause of action (fourth cause of action) that the NOD on the second loan was fraudulent because defendants falsely represented they had authority to proceed with foreclosure on the Property; defendants lacked authority to foreclose because the second loan had been paid in full in 2009; defendants falsely represented that a second DOT existed, which could be foreclosed upon; and the NOD failed to comport with the second DOT notice requirements by not providing notice that plaintiff had the right to stop the Property sale by bringing a court action to challenge the default.

Plaintiff also alleged defendants' representative, Hammar, falsely told plaintiff the foreclosure sale date and notices could be disregarded because defendants were not proceeding with the sale. Plaintiff further alleged that, after the trustee's sale, defendants falsely told her they would prevent an unlawful detainer action from proceeding if she paid $20,000, when, in fact, they had no intention of rescinding the trustee's sale.

In the negligent misrepresentation cause of action (fifth cause of action), plaintiff alleged the same misrepresentations alleged in the fraud cause of action (fourth cause of action). Plaintiff further alleged defendants made the following misrepresentations: SRP owned a beneficial interest in the second loan and had a right to foreclose; the second loan was not paid in full in 2009; and defendants lawfully foreclosed using a valid NOD and NOTS, which were actually invalid and fraudulent, because the second loan was paid in full in 2009.

23

In the sixth cause of action for promise without intention to perform, plaintiff incorporated the allegations in the fraud and negligent misrepresentation causes of action. Plaintiff further alleged that on September 17, 2017, defendants' authorized agent, Hammar, telephonically promised plaintiff that the trustee's sale would not go forward and plaintiff should disregard any notice of sale. Contrary to this promise, the trustee's sale took place on September 18, 2017. Defendants allegedly knew that when Hammar made the false promise, the promise was false, defendants had no intention of keeping it, and defendants made the promise to induce plaintiff's reliance on it.

### 3. *Analysis*

Plaintiff's fraud-related causes of actions are primarily founded on allegations that the NOD on the second loan was fraudulent and deficient, that defendant did not have authority to proceed with foreclosure, that the second loan was paid in full in 2009; and that a second DOT no longer existed and therefore could not be foreclosed upon. These allegations were insufficient to support plaintiff's fraud-related claims because the allegations were conclusory and unsupported by specific facts. In addition, the second loan and foreclosure documents attached to the SAC established as a matter of law that the material allegations were untrue. The documents showed that at the time of the trustee's sale there existed a valid second DOT, plaintiff was in default on the second loan, and defendants properly and lawfully noticed the foreclosure proceedings, including the trustee's sale. Furthermore, the SAC's allegations established that plaintiff failed to tender payment of the amount in default.

24

Plaintiff also failed to allege that any of defendants' officers, directors, or managing agents, identified by name, made or had advance knowledge of the alleged misrepresentations and consciously disregarded, authorized, ratified, or acted with oppression, fraud, or malice. (*Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645; *Tarmann v. State Farm Mutual Auto. Ins. Co.*, *supra*, 2 Cal.App.4th at p. 157.) The only individual plaintiff named in the fraud-related causes of action, who allegedly acted on behalf of defendants, was Hammar, who, as an alleged "authorized agent for" defendants, misrepresented that the trustee's sale would not go forward on September 18, 2017, as noticed. Hammar was not an alleged officer, director, or managing agent of defendants. Even if he qualified as such, plaintiff failed to allege facts showing reasonable detrimental reliance on Hammar's telephone statement the day before the notice sale. "'"[A] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance. . . . 'If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery.'" [Citation.] A mere "hopeful expectation[ ] cannot be equated with the necessary justifiable reliance.'" [Citation.]" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 418.)

Furthermore, plaintiff's allegations in the SAC show that she did not detrimentally rely on Hammar's alleged misrepresentation that the trustee's sale would not go forward or Hammar's alleged oral proposal to rescind the sale for $20,000. Plaintiff alleged she believed, at the time of the trustee's sale, that she was not in default on the second loan

and defendants did not have authority to foreclose.  She further alleged that she believed the trustee's sale was conducted unlawfully, that reinstating the second loan was not the only way to avoid foreclosure, and that, even if she paid $20,000, defendants would not rescind the sale.

Therefore, regardless of Hammar's false representation that the trustee's sale would not go forward as noticed and Hammar's representation that defendants would rescind the trustee's sale for $20,000 may have been false, the SAC's allegations demonstrate that her conduct would have been the same.  The trustee's sale would have gone forward without plaintiff taking any effective action to postpone or rescind the trustee's sale.  Plaintiff fails to allege any facts showing that Hammar's statements induced her to act or refrain from acting, or that she sustained damages from reliance on Hammar's statements.  The fourth, fifth, and sixth causes of action of the SAC for fraud, negligent misrepresentation, and promissory fraud therefore do not contain sufficient facts to support plaintiff's fraud-related claims.

C.  *Cause of Action Based on Sections 2924, et seq.*

Plaintiff alleged in her seventh cause of action for damages that defendants violated the Homeowner's Bill of Rights (HBOR; 2924, et seq.) by improperly and wrongfully proceeding with foreclosure.  "The Homeowner Bill of Rights (Civ. Code, §§ 2920.5, 2923.4-2923.7, 2924, 2924.9-2924.12, 2924.15, 2924.17-2924.20) (HBOR), effective January 1, 2013, was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to

26

obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' (§ 2923.4.)" (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)

Plaintiff alleged in the seventh cause of action that there was no justification for defendants filing a wrongful NOD because plaintiff was not in default on the second loan, which was paid off in 2009; defendants executed and recorded an invalid NOD, in violation of sections 2924 and 2924b, because plaintiff was not in default; defendants failed to properly serve the NOD and NOTS; and defendants did not remedy their violations under section 2924.19, by rescinding the unlawful trustee's sale, contacting credit agencies to restore plaintiff's credit score, and crediting plaintiff's account for unnecessary and unlawful fees, interest and costs arising from the wrongful foreclosure.

As noted above, such conclusory allegations, without alleging underlying facts, are insufficient to support a cause of action, particularly when the attached documents establish that the foreclosure proceedings were not improper or unlawful, and defendants complied with statutory foreclosure requirements. Furthermore, there is no legal authority to bring plaintiff's private claim for the alleged violations of sections 2924, 2924b, and 2924.19.

Under section 2924.12, subdivision (b) of the HBOR, the Legislature only authorized a private right of action for damages under the following limited seven statutory violations: "After a trustee's deed upon sale has been recorded, a mortgage

27

servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to [s]ection 3281, resulting from a material violation of [s]ection 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale." (§ 2924.12, subd. (b).)  Plaintiff has not alleged violations of any of these statutes or any related damages.

Section 2924.19, subdivision (b) of the HBOR provides for a private right of action for damages, but only in the following limited circumstances:  "After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to [s]ection 3281, resulting from a material violation of [s]ection 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale."  Plaintiff has not alleged violations of any of these statutes or any related damages, and the Legislature has not provided private rights of action for plaintiff's alleged violations of sections 2924 or 2924b.  These statutes are not listed in sections 2924.12(b) and 2924.19(b).

Under the HBOR, a private action for damages may be brought based on "a material violation of the statutory provisions that the Legislature has chosen to list, but not due to a violation of unlisted provisions.  'Generally, the expression of some things in

28

a statute implies the exclusion of others not expressed.' [Citations.]" (*Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 159.) As the Legislature chose to provide for damages for some HBOR violations, but not for those not specified, plaintiff cannot bring a private action for violations of sections 2924 or 2924b, because those sections are excluded from the list of HBOR statutes supporting a private action. (*Lucioni v. Bank of America, N.A.*, *supra*, at p. 159; *Cornejo v. Ocwen Loan Serv'g* (E.D. Cal. 2015) 151 F.Supp.3d 1102, 1117-1118.)[4] We therefore conclude plaintiff has not alleged an independent private right of action for violations under the HBOR.

D. *Wrongful Foreclosure and Related Quiet Tittle and Cancellation Claims*

Plaintiff has also failed to allege a wrongful foreclosure cause of action (13th cause of action) and related causes of action for quiet title (eighth cause of action) and cancellation of instruments (ninth cause of action). Plaintiff alleged in her quiet title cause of action (eighth cause of action) that there is a dispute over whether the second loan was paid off in full in 2009, and that defendants did not have authority or the right to foreclose on the Property securing the loan because the loan was paid in full and she was not in default on the second loan. These same allegations form the basis of plaintiff's ninth cause of action for cancellation of instruments under section 3412. Plaintiff

---

[4] We note that under section 2924.15, HBOR sections 2924, subdivision (a)(5), 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 "*shall apply only to first lien mortgages or deeds of trust* that are secured by owner-occupied residential real property containing no more than four dwelling units." (§ 2924.15, italics added.) Violations of these enumerated HBOR provisions therefore do not support liability against defendants here because the instant case concerns a second DOT.

requests a judicial determination as to whether defendants have any interest in the Property under the second loan and second DOT. Plaintiff further alleged in the ninth cause of action that she was not required to tender payment of the outstanding debt because the loan was already paid off and the foreclosure proceedings were unlawful and fraudulent.

As to plaintiff's 13th cause of action for wrongful foreclosure, she alleged defendants failed to comply with the statutory provisions regulating non-judicial foreclosures, including section 2924. Plaintiff alleged SRP fraudulently claimed a beneficial interest in the second loan; fraudulently claimed the second loan was not paid off in 2009; did not have authority to foreclose on the Property; did not provide a valid NOD or NOTS; provided false and misleading representations through Hammar that the trustee's sale would not go forward as noticed; falsely represented there was a second DOT in existence; and fraudulently attempted to convince plaintiff to pay $20,000 to prevent an unlawful detainer action and her eviction from the Property.

The elements of a wrongful foreclosure cause of action, which is a common law tort claim, are: "'"(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering."'"

(*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525, quoting *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 561-562.) Plaintiff fails to allege wrongful foreclosure as a matter of law because, as already discussed, plaintiff's allegations and attached documents establish that the foreclosure proceedings and trustee's sale were not illegal, fraudulent, or willfully oppressive.

We conclude plaintiff's conclusory allegations were insufficient to allege a wrongful foreclosure claim, where the facts stated in the documents attached to the SAC supersede plaintiff's allegations in the 13th cause of action. The documents attached to the SAC demonstrate the foreclosure proceedings were proper and lawful. Plaintiff's eighth and ninth causes of action for quiet title and cancellation of instruments, which are contingent upon plaintiff's wrongful foreclosure claim, therefore also do not survive defendants' demurrer.

Furthermore, plaintiff has not satisfactorily alleged tender of the amount of the secured indebtedness or a valid exception to the tender requirement. (*Lona v. Citibank, N.A.,* (2011) 202 Cal.App.4th 89, 112-113.) Under the tender rule, "as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security. (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *Onofrio* [*v. Rice* (1997) 55 Cal.App.4th 413], at p. 424 [the borrower must pay, or offer to pay, the secured debt, or at least all of the delinquencies and costs due for redemption, before

commencing the action].) 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' [Citation.]" (*Lona v. Citibank, N.A.*, *supra*, at p. 112.)

Because plaintiff failed to allege wrongful foreclosure and compliance with the tender rule, the trial court properly sustained defendants' demurrer to the eighth, ninth, and 13th causes of action for wrongful foreclosure, quiet title, and cancellation of instruments.

E. *Cause of Action for Violating the Commercial Code*

Plaintiff alleged in her 10th cause of action that defendants violated Commercial Code section 3118 by failing to foreclose on the second loan within six years after the amount of the unpaid balance on the second loan became due. This claim fails as a matter of law because Commercial Code section 3118 is merely a statute of limitations provision, which is a defense, not a cause of action. Furthermore, Commercial Code section 3118 does not concern the limitation period for enforcement of a deed of trust by nonjudicial foreclosure.

F. *Negligence Cause of Action*

Plaintiff's 11th cause of action for negligence is based on conclusory allegations that defendants negligently proceeded with the wrongful foreclosure of the Property without any legal authority to do so. The second loan was allegedly paid off in 2009, and therefore defendants refrained from initiating foreclosure proceedings on the second loan

until years later.  Plaintiff further alleged the NOD and NOTS were fraudulent and invalid, and the trustee's sale was void.  Defendants allegedly owed plaintiff a contractual duty and duty under Commercial Code sections 2924, et seq., which defendants breached by proceeding with the allegedly unlawful, fraudulent trustee's sale of the Property, even though the second loan was paid in full in 2009.

As a matter of law, under the facts alleged in the SAC and attached documents, defendants did not owe plaintiff a duty or negligently breach such a duty not to foreclose on the second loan, because defendants had a legal right to proceed with foreclosure under the second DOT.

G. *Unfair Competition Cause of Action*

Plaintiff's 12th cause of action, alleging unfair competition in violation of Business and Profession Code (BPC) section 17204 (UCL action), failed to state a valid claim.  Plaintiff alleged in the 12th cause of action that defendants committed and would continue to commit fraudulent and deceptive acts and practices likely to deceive California consumers, including plaintiff.  Such unlawful, unfair and fraudulent acts and practices allegedly consisted of defendants foreclosing on properties, including plaintiff's property, without having any interest in the properties, by misrepresenting that they owned a beneficial interest in a loan or deed of trust and could foreclose, and did so by improperly and fraudulently recording fraudulent documents and then proceeding with unlawful nonjudicial foreclosure proceedings.  Plaintiff further alleged such acts caused plaintiff, as well as other California consumers, to lose property through foreclosure, and

33

incur unfair and unwarranted fees, charges, negative credit scores, and attorney fees. Therefore, under BPC sections 17200, 17203, and 17204, plaintiff allegedly was entitled to injunctive relief, attorney fees, and damages.

Unfair competition is defined in BPC section 17200 as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with [s]ection 17500) of Part 3 of Division 7 of the Business and Professions Code." BPC section 17203 states in relevant part: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. . . . Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of [s]ection 17204 and complies with [s]ection 382 of the Code of Civil Procedure . . . ." BPC section 17204 provides in relevant part that "[a]ctions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney or by a county counsel . . . or by a city attorney . . . or by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.

A plaintiff meets the private standing requirements of BPC section 17204, to bring a private UCL action if the plaintiff "(1) establish[es] a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show[s] that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false

34

advertising that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322.)

Plaintiff has failed to allege a valid claim under BPC section 17204 because she has not alleged the second element, economic loss caused by an unfair business practice. Plaintiff has not alleged a causal link between her economic injury, that is, the nonjudicial foreclosure of her home, and unfair and unlawful business practices allegedly committed by defendants. (*Kwikset Corp. v. Superior Court*, *supra*, 51 Cal.4th at p. 326.) Plaintiff alleged she stopped making payments on the second loan in 2009. Although she allegedly believed she was not required to make any further payments, the SAC and attached documents establish that she defaulted on her second loan through no fault of defendants. This default triggered defendants' lawful enforcement of the power of sale clause in the second DOT, which subjected plaintiff's home to nonjudicial foreclosure.

Because the foreclosure was triggered by plaintiff defaulting, plaintiff has failed to allege the foreclosure was caused by defendants' wrongful actions in violation of BPC 17204. Therefore the trial court properly sustained defendants' demurrer to plaintiff's UCL cause of action.

H. *Amending the SAC*

Plaintiff urges this court to grant her leave to amend the SAC. Plaintiff asserts that her complaint "can be amended to address clarity and identify facts as set forth in the transcript on the last hearing." It is unclear which hearing she is referring to. Plaintiff did not state any facts demonstrating the ability to successfully amend the SAC during

35

the hearing on defendants' demurrer to the SAC or in opposition to the demurrer. Plaintiff did not file written opposition to defendants' demurrer. However, during the hearing on defendants' demurrer, she requested a continuance to amend the SAC in response to defendants' demurrer. The court denied plaintiff's request to continue the hearing, as well as her request to file a third amended complaint. When the court asked plaintiff if she wanted to add anything, she indicated she had new evidence and documents, but did not reveal what they were. The matter was then taken under submission and, thereafter, the court sustained defendants' demurrer without leave to amend.

Generally, leave to amend is proper when "there is a reasonable possibility the plaintiff could cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) On appeal, "the burden is on the plaintiff to show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408.)

Here, plaintiff did not state in the trial court new facts demonstrating she could successfully amend the SAC, and a potentially effective amendment is not apparent on appeal. Plaintiff failed to file any written opposition to defendants' demurrer, although the trial court permitted her to orally oppose the demurrer during the hearing on defendants' demurrer. Plaintiff did not state during her oral opposition any new facts or law that would cure the defects in her SAC. Plaintiff also has not stated on appeal how she can successfully amend her complaint to overcome the defects in her complaint.

Because she has not demonstrated a reasonable possibility that an amendment can cure the defects in the SAC, we conclude the trial court did not abuse its discretion in denying plaintiff leave to amend her complaint, and this court also denies plaintiff leave to amend.

V.

DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.